IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

HAROLD JONES,                          §
                                       §
      Plaintiff,                      §
                                       §
V.                                     §
                                       §          No. 3:16-cv-2331-K-BN
SELECT PORTFOLIO SERVICING,            §
INC. AND THE BANK OF NEW               §
YORK MELLON,                           §
                                       §
      Defendants.                     §
                                       §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. The undersigned issues the following findings of fact, conclusions of law, and recommendation on the Court's subject matter jurisdiction over this case and on the Motion to Dismiss [Dkt. No. 7] (the "Motion to Dismiss") filed by Defendants Select Portfolio Servicing, Inc. and The Bank Of New York Mellon fka The Bank of New York as Trustee For the Certificate Holders of the CWABS, Inc., Asset-Backed Certificates, Series 2005-3 (collectively, "Defendants").

## Background

On February 15, 2005, Plaintiff Harold Jones purchased a home in Dallas, Texas (the "Property"). Plaintiff signed a promissory note (the "Note") in the amount

of $301,050.00 to finance the purchase. The Note was secured by a deed of trust pleadedging his interest in the Property as security (the "Deed of Trust").

The "Note" and "Deed of Trust" (collectively referred to as the "Loan") have changed hands multiple times. The Bank of New York Mellon fka the Bank of New York as Trustee ("BONYM") for the Certificate Holders of CWABS, Inc. ("the CWABS Trust") currently hold the Loan. Select Portfolio Servicing ("SPS") currently services the Loan.

Plaintiff spoke with an SPS agent over the phone to request loan modification assistance around August 2015. He sent SPS a letter following-up on his request the same day.

Plaintiff tried to contact SPS on multiple occasions to confirm the status of his loan throughout the following year. But he was not able to confirm whether SPS approved or denied his request.

Plaintiff tried to make payments on the mortgage while awaiting a response. He provided SPS a $15,978.95 payment on January 11, 2016, a $3,350.00 payment on January 15, 2016, and a $3,350.00 payment on January 26, 2016. SPS returned each payment to him without explanation.

Plaintiff subsequently requested an itemized accounting from SPS. He did not receive a response.

Defendants ultimately posted the Property for a foreclosure sale to occur on August 2, 2016.

Plaintiff commenced this lawsuit by filing a petition on July 28, 2016 in the 348th Judicial District Court, Tarrant County, Texas. The petition seeks a temporary restraining order that stops Defendants from foreclosing on the Property. It alleges that Defendants failed to respond to his requests for a loan modification, accept his mortgage payments, respond to his accounting requests, and provide timely notice of any loss mitigation options available to him prior to the foreclosure sale. He purports that these acts violate 12 C.F.R. § 1024.38(b), 12 C.F.R. § 1024.41, and the tort of "negligent undertaking."

Defendants removed the case to this Court on August 11, 2016. They allege that the Court has diversity-of-citizenship jurisdiction or, alternatively, federal question jurisdiction. *See* Dkt. No. 1. Acting on the Court's request, *see* Dkt. No. 6, the parties submitted briefs that addressed whether the Court had diversity jurisdiction on September 9, 2016, *see* Dkt. Nos. 10 & 11.

Defendants also filed a Motion to Dismiss for Failure to State a Claim with this Court. Plaintiff filed a response, and Defendants filed a reply.

The undersigned now concludes that the Court has subject matter jurisdiction over this case and that Defendants' Motion to Dismiss should be granted.

## Subject Matter Jurisdiction

The Court "ha[s] a duty to raise the issue of subject matter jurisdiction sua sponte" and, where a case is removed, "must determine whether the district court would have had original jurisdiction had the case been filed there." *H&D Tire & Auto-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 328 (5th Cir. 2000). Even where

neither party has "contested the allegations in the removal notice nor moved for remand, it is settled law that subject-matter jurisdiction cannot be waived or 'conferred by consent, agreement, or other conduct of the parties.'" *Smith v. Bank of Am. Corp.*, 605 F. App'x 311, 315 n.4 (5th Cir. March 20, 2015) (quoting *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 284 (5th Cir. 2007)).

Accordingly, on August 15, 2016, the Court ordered the parties to file briefs on whether Defendants had shown complete diversity of citizenship in its Notice of Removal. *See* Dkt. No. 6. Defendants maintain that they have established diversity jurisdiction. They alternatively claim that this Court has federal question jurisdiction as well as supplemental jurisdiction over any remaining state law claims since they are part of the same case or controversy.

The undersigned now concludes that the Court has subject matter jurisdiction over the action.

A party may remove an action from state court to federal court if the federal court possesses subject matter jurisdiction over the action. *See* 28 U.S.C. § 1441. Federal courts generally have subject matter jurisdiction only where the parties are completely diverse or where the action involves a question of federal law. *See* 28 U.S.C. §§ 1331-32.

When determining if it has federal jurisdiction, the Court focuses on the plaintiff's pleadings "as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). But the Court "may be required to survey the entire record … and base its ruling on the complaint, on

undisputed facts, and on its resolution of disputed facts." *Aquafaith Shipping*, *Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992). Any "ambiguities are construed against removal," and "[t]he removing party bears the burden of showing that federal jurisdiction exists." *Manguno*, 276 F.3d at 723.

I.    The Court has diversity jurisdiction over the action.

Diversity jurisdiction exists where the matter in controversy exceeds $75,000.00 and the parties are completely diverse. *See* 28 U.S.C. § 1332.

The parties do not dispute whether the requisite amount in controversy is satisfied. Plaintiff seeks to halt Defendants from foreclosing on a property that a tax appraisal indicates is worth well above $75,000.00. *See Waller v. Professional Ins. Corp.*, 296 F.2d 545, 547-48 (5th Cir. 1961) (explaining that "when the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy"); *but see Alsobrook v. GMAC Mortg., LLC*, No. 3:11-cv-603, 2012 WL 1643220 at *1-2 (N.D. Tex. April 13, 2012) (discussing a minority view reflected in *Ballew v. America's Servicing Co.*, No. 4:11-cv-30-A, 2011 WL 880135 at *3-*5 (N.D. Tex. April 13, 2012), that the amount in controversy is determined by the value of postponing the foreclosure). The amount-in-controversy requirement is satisfied here.

But the parties dispute whether there is complete diversity. The parties are not diverse "if one of the plaintiffs shares the same citizenship as any one of the defendants." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). "When jurisdiction depends on citizenship, citizenship should be distinctly and

affirmatively alleged." *McGovern v. American Airlines*, 511 F.2d 653, 654 (5th Cir. 1975) (internal quotation marks omitted). Failure to adequately allege the basis for diversity jurisdiction mandates dismissal. *See id.*

Defendants insist that the parties are diverse. They note that BONYM is the real party to the suit – not the CWABS Trust – and BONYM does not share citizenship with Plaintiff.

Plaintiff disagrees. He argues that the CWABS Trust is the real party and that Defendants failed to affirmatively and distinctly allege the citizenship of each CWABS Trust member.

Courts only look to the citizenship of the "real and substantial parties to the controversy" for diversity purposes. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980). Courts make this determination based on "whose conduct is the subject of the claim and against whom the action is alleged." *Ewert v. Poly Implant Protheses*, Civ. A. No. H-07-3065, 2008 WL 4747206 at *1 (S.D. Tex. Oct.27, 2008) (citing *Jones v. Louisiana*, 764 F.2d 1183, 1185 (5th Cir. 1983)). A court may thus look to "the citizenship of non-parties when a party already before [it] is found to be a non-stake holder/agent suing only on behalf of another." *Corfield*, 355 F.3d at 865 n.10.

Determinations about whether the trust or trustee is the real party to the action are informed by the duties that the trust has delegated to its trustee. Courts have long held that a trustee is the real party when the trust has ceded "certain customary powers to hold, manage, and dispose of assets" to the trustee and the

trustee's actions or interests are the subject of the suit. *See Navarro*, 446 U.S. at 464-65 (discussed in further detail below).

The Supreme Court's decision in *Americold Realty Trust v. Conagra Foods, Inc.,* 136 S. Ct. 1012 (2016), does not change this step of the analysis. *Americold* focuses on how to determine the citizenship of a trust where the trust is the real party in the suit. *See id.* at 1016 (explaining that "*Navarro* had nothing to do with the citizenship of [a] 'trust.' Rather, *Navarro* reaffirmed a separate rule that when a trustee files a lawsuit in her name, jurisdictional citizenship is the State to which she belongs – as is true of any natural person. This rule coexists with our discussion above that when an artificial entity is sued in its name, it takes the citizenship of its members." (internal citations omitted)); *see also U.S. Bank Trust, N.A. v. Dupre*, No. 615CV0558LEKTWD, 2016 WL 5107123 at *4 (N.D.N.Y. Sept. 20, 2016) ("This rule, however, only applies when the trustees are the real parties in interest to the controversy, meaning, among other things, that they are 'active trustees whose control over the assets held in their names is real and substantial.' *Navarro*, 446 U.S. at 462-66.").

In *Navarro*, the Supreme Court found that eight trustees were the "real and substantial parties" to the action where the trustees "s[ought] damages for breach of an obligation running to the holder of a promissory note held in [the trustees'] own names." *Navarro*, 446 U.S. at 464. The Court observed that the trustees had legal title, managed the assets, and controlled the litigation. *Id.* at 465. They were not "naked trustees" who acted as "mere conduits" for a remedy flowing to others. *Id.* In

contrast, the Trust's 9,500 beneficial shareholders had no voice in initial investment decisions, could not control the disposition of the action, and could not intervene in the affairs of the trust except in the most extraordinary situations. *See id.* at 464-65.

But a trust is considered a real party to the action where the trust's own interests or own actions are the subject of the claims at issue. *See Americold,* 136 S. Ct. at 1015-16 (analyzing the citizenship of a trust in a suit for damages caused in a warehouse the trust was charged to hold and manage); *Juarez v. DHI Mortgage Company Ltd.,* No. H-15-3534, 2016 WL 3906296 at *3 (S.D. Tex. July 19, 2016) (finding the trust to be a real party because "the complaint treats the 2004-68 Trust as [a] separate defendant from [the trustee] by alleging the trust itself wrongfully foreclosed on Juarez's property"); *Argo Global Special Situations Fund v. Wells Fargo Bank, N.A.,* 810 F. Supp. 2d 906, 909-15 (D. Minn. 2011) (finding the trust was the real party because the plaintiffs did not allege any wrongdoing by Wells Fargo, the trustee).

In *Wells Fargo Bank N.A. v. Transcontinental Realty Investors, Inc.*, No. 3:14-cv-3565, 2016 WL 3570648 at *1 (N.D. Tex. July 1, 2016), appeal filed, No. 16-11167 (5th Cir. July 25, 2016), Wells Fargo invoked the Court's diversity jurisdiction to file a suit in federal court. This Court found that the trust – and not Wells Fargo – was the real party in the action because the complaint "makes clear that Wells Fargo [was] only a nominal or formal party suing on behalf of the [t]rust." *Id.* at *2. Wells Fargo's own complaint defined "the Trust" as the "Plaintiff"; identified "the Trust" as the only party seeking relief; explained that "the Trust" brought a foreclosure action

after the defendant defaulted; and alleged that "[t]he Trust would not have consented to the Borrower's assumption of the [l]oan without the inclusion of SPE restrictions in the Borrower's Articles of Incorporation." Complaint at 1-2 ¶1, 4 ¶17, 8 ¶38, & 9 ¶45, *Wells Fargo Bank, N.A. v. Transcontinental Realty Investors, Inc.*, No. 3:14-cv-3565, 2016 WL 3560648; *see also id. at* 4 ¶16 & 6 ¶¶24-26.

Plaintiff's claims and the nature of BONYM's relationship with the CWABS Trust make clear that BONYM is the real and substantial party in the controversy. Plaintiff asks the Court to enjoin Defendants from foreclosing on the Property. He alleges that Defendants failed to respond to his requests for a loan modification, accept his mortgage payments, respond to his accounting requests, and provide timely notice of any loss mitigation options available to him prior to the foreclosure sale. In short, Plaintiff is asking the Court to rule on the management and disposition of his Loan as a CWABS Trust asset.

These are powers that the CWABS Trust has wholly and actually ceded to BONYM, which BONYM shares with its loan servicers. The Pooling and Services Agreement ("PSA") between CWABS, Inc. and BONYM, among others, endows BONYM with all interest in Plaintiff's Loan. This includes the right to enforce it. Section 2.01 of the PSA provides that the Depositor wholly "transfer[red], assign[ed], set[] over and otherwise convey[ed] to the Trustee 'all right, title, and interest'" in all mortgage loans. And Section 10.04 of the PSA reiterates that the conveyance of the mortgage loans is "to be construed as, an absolute sale thereof to the Trustee."

Plaintiff alleges that "any decisions to be made on [his] loan or any modification therein would require the approval of the investors of the Trust and not BONYM," making the CWABS Trust the real and substantial party in the action.

But the PSA indicates that the Certificate holders do not have the right to vote or any meaningful way to otherwise control the operation and management of the CWABS Trust. *Cf. Americold,* 136 S. Ct. at 1016 (analyzing the citizenship of a real estate investment trust where the trust's shareholders retained ownership interests and rights to vote on the management of the trust). Plaintiff's petition itself also alleges that BONYM holds the Loan. *See* Dkt. No. 1 at Ex. D-1 at 3 (noting that "the Loan was sold, assigned, or transferred to BONY[M] as the mortgagee").

This action implicates BONYM's ownership interest and BONYM's management of Plaintiff's loan as a CWABS Trust asset. BONYM is thus the real party in this action.

Since Defendants have established that Plaintiff does not share citizenship with either BONYM or SPS, the undersigned concludes that this Court has diversity jurisdiction over this action.

II.   <u>The Court also has federal question jurisdiction over this action.</u>

A federal court has federal question jurisdiction only if "a federal question appears on the face of the plaintiff's well-pleaded complaint." *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). In most instances, a federal question appears because the plaintiff "plea[ds] a cause of action created by federal law (e.g., claims under 42 U.S.C. § 1983)." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*,

545 U.S. 308, 312 (2005); *see also Brewster v. Nationstar Mortg., LLC,* No. 3:13-cv-2807-M, 2013 WL 6501261 at *3 (N.D. Tex. Dec. 10, 2013) ("Plaintiff's Petition, as it stood at the time of Defendant's removal, presented a federal question under RESPA. Thus, this Court has federal question jurisdiction over the matter").

But a state-law claim can still "arise[] under federal law" where "the state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

The Court has federal question jurisdiction here because Plaintiff has brought a cause of action that was created by federal law. Plaintiff alleges that Defendants violated 12 C.F.R. §§ 1024.41 and 1024.38(b). Plaintiff does not merely mention these violations as proof that Defendants violated some other state law cause of action. *See Hyde v. USAA Fed. Savings Bank*, No. 3:14-cv-4356, 2015 WL 1893149 at *4 (N.D. Tex. Apr. 27, 2015) (rejecting the defendant's contention that the plaintiffs raised a claim under RESPA merely by citing it in their complaint). Instead, Plaintiff alleges these violations as independent causes of action. With respect to Section 1024.41, he correctly notes that:

> [Violations of Section 1024.41] are not merely a defense to foreclosure but are actionable under 12 U.S.C. § 2605(f), which in turn allows for the recovery of actual damages, court costs, statutory damages of up to $2,000.00, and attorney['s] fees.

Dkt. No. 1 at Ex. D-1 at 9. Plaintiff accordingly asks the Court to enjoin Defendants from foreclosing on the Property and for any applicable "statutory damages," among other prayers for relief. *Id.* at Ex. D-1 at 12.

In their Motion to Dismiss, Defendants argue that violations of Section 1024.38(b) do not give rise to a cause of action. Plaintiff does not appear to dispute this point and has pleadedged to withdraw this claim. *See* Dkt. No. 14 at 4.

This development does not change the undersigned's conclusion. Plaintiff is still asserting a claim under Section 1024.41, which both parties agree the Real Estate Settlement Procedures Act ("RESPA") makes actionable. *See* 12 C.F.R. § 1024.41 ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. [§] 2605(f)"). Further, the Court considers Plaintiff's petition as it "existed at the time of removal" to determine questions concerning jurisdiction. *Manguno*, 276 F.3d at 723.

The Court therefore also has federal question jurisdiction in this action.

## Motion to Dismiss for Failure to State a Claim

The undersigned turns then to Defendants' Motion to Dismiss.

A "Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith*, 615 F. App'x at 833 (quoting *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 347 (2014)). A case will not be dismissed merely for an imperfect statement of the legal theory supporting the claim asserted. *See Johnson*, 135 S. Ct. at 346.

The plaintiff must plead enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has

facial plausibility when the plaintiff pleads factual allegations that allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability standard." *Id*. But it does ask for more than a sheer possibility that a defendant has acted unlawfully. *Id*.

Courts look only to the pleadings in deciding a 12(b)(6) motion and must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Courts may also "take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008).

Defendants argue that Plaintiff has failed to state a claim for violations of 12 C.F.R. § 1024.38(b), 12 C.F.R. § 1024.41, and the tort of "negligent undertaking."

I.   <u>Plaintiff's claim for violation of 12 C.F.R. § 1024.38(b) should be dismissed.</u>

Defendants first argue that Plaintiff does not have a claim under 12 C.F.R. § 1024.38(b) because there is no private right of action for violation of this provision. *See Smith v. Nationstar Mortg.* No. 15-13019, 2015 WL 7180473 at *3-4 (E.D. Mich. Nov. 16, 2015) (finding that violations of Section 1024.38 do not create a private cause

of action). Plaintiff now indicates he is no longer pursuing this claim. *See* ECF No. 14 at 4. The undersigned thus concludes that this claim should be dismissed with prejudice.

II.   Plaintiff's claim for violation of 12 C.F.R. § 1024.41 should be dismissed.

Defendants argue that Plaintiff failed to adequately plead a claim under 12 C.F.R. § 1024.41. Section 1024.41 provides that if a servicer receives a loss mitigation application forty-five days or more before a foreclosure sale, the servicer shall review the application for completeness and notify borrowers of loss mitigation options that may be available to them. *See* 12 C.F.R. § 1024.41.

Defendants contend that Plaintiff has not shown that Defendants had an obligation to respond to his application at all. Section 1024.41(i) provides that "[a] servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account." 12 C.F.R. 1024.41(i) (emphasis added). They note that Plaintiff has not pleaded that he submitted a "complete" loan modification application or that this was the first application he submitted. *See* 12 C.F.R. 1024.41(i).

Defendants correctly note that Plaintiff did not explicitly allege that he submitted a "complete" application. But they are wrong to conclude that this omission in and of itself warrants dismissal of this claim.

Defendants' position is based on a misunderstanding of what Section 1024.41 requires and how it applies to the present case. Section 1024.41(c)(iv) explains that:

> If a borrower submits all the missing documents and information as stated in the notice required pursuant to Section 1026.41(b)(2)(i)(B) or

<u>no additional information is requested in such notice</u>, the application
shall be considered facially complete.

12 C.F.R. Sec. 1024.41(c)(iv) (emphasis added). A "facially complete" application is
"commensurate with general 'completeness' for the purposes of triggering the
servicer's evaluation obligations" – at least until the borrower is given an opportunity
to complete the application. *Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172,
1183 (S.D. Fla. 2015) (summarizing Section 1024.41(c)(iv)).

Plaintiff has pleaded enough facts to create the inference that his application
should be construed as "complete" for purposes of the statute. *See Gresham v. Wells
Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. March 21, 2016) (only affirming
dismissal of a RESPA claim after noting that "Gresham did not plead, <u>nor is there
any evidence that he submitted</u> a complete loss mitigation application more than 37
days before the April 1, 2014 foreclosure sale" (emphasis added)). Plaintiff purports
that he submitted a loan modification request orally and in writing in August 2015,
that he called Defendants repeatedly in an attempt to follow-up only to get the run
around, and that they had not "confirm[ed] the status of his request" before
scheduling a foreclosure sale in August 2016. Viewed in the light most favorable to
him, Plaintiff is essentially alleging that Defendants did not notify him either that
his application was complete or that he needed to submit additional information to
make it complete.

The undersigned therefore concludes that Plaintiff sufficiently pleaded, for
purposes of surviving a Rule 12(b)(6) motion, that he submitted a "complete"
application.

Plaintiff has nevertheless failed to state a claim under Section 1024.41. Defendants correctly note that Section 1024.41 "only appl[ies] to a borrower's first loss mitigation application." *Wenztell v. JPMorgan Chase Bank, Nat'l Ass'n*, 627 F. App'x 314, 318 n.4 (5th Cir. Oct. 2, 2015) (analyzing Section 1024.41 in dicta). Nothing in Plaintiff's Petition allows the Court to infer that this suit concerns Plaintiff's first loan modification request. Plaintiff now insists that he did not previously submit a loan modification request. But courts look only to the pleadings in deciding a 12(b)(6) motion. *Collins*, 224 F.3d at 498.

The undersigned therefore concludes this claim should thus be dismissed but, because it is not clear that Plaintiff has yet pleaded his best case and has not previously amended his allegation, without prejudice.

III.   <u>Plaintiff's claim for negligent undertaking should be dismissed.</u>

Plaintiff finally alleges that he has a claim for negligent undertaking. He alleges that Defendants failed to exercise reasonable care in duties that Defendants undertook while managing his Loan and processing his loan modification request.

Defendants insist that Plaintiff's claim for negligent undertaking fails because: (1) his claim is barred by Texas's economic loss rule; (2) they do not owe a duty to him sufficient to support such a claim; and (3) his claim is inadequately pleaded.

The undersigned first addresses Defendants arguments concerning Texas' economic loss rule. The "economic loss rule reflects a preference for allocating some economic risks by contract rather than by law." *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014). But "the rule is not generally applicable in every

situation." *Id.*at 235-36. It "allows recovery of economic damages in tort, or not, according to its underlying principles." *Id.* at 236. A tort claim can co-exist with a contract claim when Defendants have breached a duty that is independent from the contract between the parties. *See Formosa Plastics*, 960 S.W.2d at 46. The harm suffered cannot be "'merely the economic loss of a contractual benefit.'" *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015) (quoting *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014)).

Accordingly, the economic loss rule regularly precludes foreclosure actions that seek economic damages based only on the duties enumerated in the deed. *See, e.g., Thompson v. Bank of America, N.A.*, 13 F. Supp. 3d 636, 652-53 (N.D. Tex. 2014) (finding that the rule precludes a negligence claim based on the defendant's duty to manage the loan since these duties derive from the deed of trust). Texas does not recognize a "special relationship between a mortgagor and a mortgagee that would give rise to a stand-alone duty of good faith and fair dealing." *Milton v. U.S. Bank Nat. Ass'n¸* 508 F. App'x. 326, 329 (5th Cir. Jan. 18, 2013).

But plaintiffs can bring a tort claim if it is brought on a basis independent from the contract. *See Formosa Plastics*, 960 S.W.2d at 45. "[I]f a particular duty is defined both in a contract and in a statutory provision, and a party violates the duty enumerated in both sources, the economic loss rule does not apply." *McCaig,* 788 F.3d at 475 (citing *Formosa*, 960 S.W.2d at 47).

In *McCaig v. Wells Fargo Bank (Texas), N.A.,* 788 F.3d 463, 475 (5th Cir. 2015), the United States Court of Appeals for the Fifth Circuit held that the economic loss

rule does not preclude claims based on Texas Debt Collector Act ("TDCA") violations. The Fifth Circuit explained that "[a] statutory offender will not be shielded from liability [under TDCA] simply by showing its violation also violated a contract." *Id.*

A judge of this Court reached the same conclusion a few months after *McCaig* was decided. In *Breitling v. LNV Corporation*, No. 3:15-cv-703-B, 2015 WL 5896131 at *4 (N.D. Tex. Oct. 5, 2015), borrowers alleged that debt collectors failed to investigate the validity of the debt the borrowers purportedly owed on their mortgage. The Court found that the economic loss rule did not preclude the borrowers from proceeding on their TDCA claims. *See id.* It explained that:

> This is a duty imposed by statute and does not arise out of any contract between the parties. Even if there were no contract between an alleged creditor and debtor – a scenario in which the debtor would likely contest the validity of the debt – the third party debt collector would still be required to investigate the validity of the purported debt (or refrain from further collection efforts until an investigation is conducted) upon a proper request by the debtor.

*Id.*

The Court added that "a party who succeeds in an action under this section of the TDCA is entitled to statutory damages (i.e., damages beyond the subject matter of the contract)." *Id.*

These rulings suggest that an attempt to invoke the economic loss rule to bar a claim for violation of Section 1024.41 might not succeed. This section places an independent duty on loan servicers to process loan modification applications according to its requirements. A party who violates this regulation is also entitled to statutory damages beyond the subject of the contract. *See* 12 U.S.C. § 2605(f) (making

those who do not comply with regulations actionable under this provision are liable for "any actual damages," "any additional damages, as the court may allow, [and] <u>in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.00</u>") (emphasis added)).

It is not immediately clear how Defendants contend that the economic loss rule applies here – at least to the extent Plaintiff's claim for negligent undertaking is based on violations of 12 C.F.R. § 1024.41. Under *McCaig*, any obligations that Defendants have undertaken in compliance with this regulation are "independent" of the contract. 788 F.3d at 475 (finding obligations under TDCA to be independent of the contract since "[a] statutory offender will not be shielded from liability [under TDCA] simply by showing its violation also violated a contract"). Plaintiff's decision to invoke these duties in a tort claim does not appear to change this analysis. *See Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x. 790, 795 (5th Cir. Oct. 16, 2014) (briefly observing that the loan servicer's duties to borrower derived from statutes on which the borrower based his other claims before concluding that the borrower's negligence claim failed because "our grounds for affirming the district court as to the statutory claims apply equally here").

The undersigned nevertheless concludes that the economic loss rule bars Plaintiff's claim for negligent undertaking. The economic loss rule bars claims where "'the harm suffered … is merely the economic loss of a contractual benefit.'" *McCaig*, 788 F.3d at 475 (quoting *Chapman*, 445 S.W.3d at 718); *see also Breitling*, 2015 WL 5896131 at *4 (finding the economic loss rule did not bar TDCA claims because "a

party who succeeds in an action under … the TDCA is entitled to statutory damages (i.e., damages beyond the subject matter of the contract)"). Plaintiff has not alleged that he has suffered damages beyond the economic damages that borrowers routinely request in foreclosure cases. His tort claim would not entitle him to statutory damages or any other damages "beyond the subject matter of the contract." *Ghanem v. Nationstar Mortg., LLC*, 2015 WL 1932046 at *3 (S.D. Tex. April 28, 2015) (finding a negligent misrepresentation claim based on the duty to keep plaintiff informed of his modification request was precluded by the economic loss rule because "all loss alleged would be recoverable in an action for breach of contract").

The undersigned therefore concludes that the economic loss rule bars Plaintiff's claim for negligent undertaking as pleaded.

Plaintiff's claim for negligent undertaking also fails for two other reasons. First, Plaintiff has not established that Defendants owe him a duty under Section 1024.41. Servicers are "only required to comply with the requirements of [Section 1024.41] for a single complete loss mitigation application." 12 C.F.R. § 1024.41(i) (emphasis added). Nothing in Plaintiff's Petition supports an inference this was the first loan modification application that he submitted.

Second, Plaintiff has inadequately pleaded this claim. To state a claim for negligent undertaking, Plaintiff must demonstrate that (1) Defendants undertook to perform services they knew or should have known were necessary for Plaintiff's protection; (2) Defendants failed to exercise reasonable care in performing those services; and (3) Plaintiff was harmed because he relied on Defendants' performance

or Defendants' performance increased his risk of harm. *See Nall v. Plunkett*, 404 S.W.3d 552 at 555-56 (Tex. 2013). Plaintiff must specifically allege some physical harm to either a person or property. *See Lovett v. HSBC Mortg. Services, Inc.*, No. 3:13-cv-3593, 2014 WL 547031 at *5 (citing *Torrington v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2001)). But Plaintiff fails to plead that he or the Property suffered any physical harm, as opposed to pecuniary damages.

Plaintiff's claim for negligent undertaking should be dismissed for these reasons but, because it is not clear that Plaintiff has yet pleaded his best case and has not previously amended his allegation, without prejudice.

## Plaintiff's Leave to Amend

Plaintiff has requested leave to amend his petition. [Dkt. No. 14]. The Court generally will grant a timely-filed motion to amend as a matter of course absent a showing of undue prejudice or futility. *See* FED. R. CIV. P. 15(a). Plaintiff has yet to amend his complaint. Nor have Defendants demonstrated that granting leave would be unfair or futile. The undersigned thus concludes that Plaintiff's motion for leave to amend should be granted.

## Recommendation

The Court should grant Defendants' Motion to Dismiss [Dkt. No. 7] and Plaintiff's Motion for Leave to Amend [Dkt. No. 14]. The Court should specifically dismiss with prejudice Plaintiff's claim for violation of 12 C.F.R. § 1024.38(b), dismiss without prejudice Plaintiff's claims for violation of 12 C.F.R. § 1024.41 and for negligent undertaking, grant Plaintiff 21 days from the date of any order adopting

these Findings, Conclusions, and Recommendation in which to file an amended complaint consistent with this recommendation and the conclusions and findings above, and order that, if Plaintiff fails to do so, the case will be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 12, 2016

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE